UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEADOWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-CV-7896 |
| | ) | Hon. Marvin E. Aspen |
| LINEAR MOLD & ENGINEERING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION & ORDER**

MARVIN E. ASPEN, District Judge:

This lawsuit arises from a contract for the sale of used machine equipment and a related lease of a facility where that equipment was housed. Before us is Defendant Linear Mold & Engineering, LLC's combined Rule 12(b)(6) motion to dismiss Counts II and III and Rule 12(f) motion to strike Meadoworks' request for punitive damages. (MTD (Dkt. No. 11).) For the reasons set forth below, we grant Linear's motion in part and deny it in part.

**BACKGROUND**

The following allegations are taken from Meadoworks' Complaint and assumed as true for the purposes of this motion. In March 2019, Meadoworks purchased over 100 used goods, including plastic injection molding machines, located in a facility ("Facility") owned by an unidentified third party. (Compl. ¶ 11.) Meadoworks arranged to keep those goods in the Facility while Meadoworks sought to resell them. (*Id.*) Then Linear showed interest in purchasing all or some of those goods ("$1.305M Equipment") and leasing the the Facility. (*Id.* ¶ 13.)

In May 2019, Meadoworks and Linear executed two agreements relating to the sale of equipment. (*Id.* ¶ 15.) One agreement was for $195,000 ("$195K Agreement") and the other was for $1,305,000 ("$1.305M Agreement"). The $195K Agreement was for the sale of three used plastic injection molding machines, due immediately upon execution of the agreement by wire transfer. (*Id.* ¶ 16; $195K Agreement, Compl. Ex. 2.) The $1.305M Agreement provided that Meadoworks would sell over 100 used goods related to plastic injection molding in exchange for $1.305M paid by Linear. (Comp. ¶ 17.) Under the terms of this $1.305M Agreement, Linear was required to pay the purchase price in two payments. (*Id.* ¶ 18.) First, an initial $5,000 payment, and then a second payment of $1,300,000 within 30 days of the agreement's execution. (*Id.*; Compl. Ex. A, ¶ 2.) As the $1.305M Agreement was fully executed on May 7, 2019, the second payment of $1,300,000 was due on June 6, 2019. (Compl. ¶ 18.) The $1.305M Agreement required Linear to pay in full before entering the Facility to remove or use the $1.305M Equipment:

> Payment in full of the Purchase Price must be received by [Meadoworks] before the [$1.305M Equipment] may be removed from the Facility and before [Linear] may begin any preparation of the [$1.305M Equipment] for removal or any use of the [$1.305 M Equipment] in any way.

(Compl. Ex. A, ¶ 2.) Meadoworks' duty to tender delivery of the $1.305M Equipment was conditioned on Linear's full payment of the purchase price. (Compl. Ex. A, ¶ 3.) The agreement also laid out what would happen to Linear's Facility lease should Linear fail to pay the full purchase price. (Compl. ¶ 22.) In such a situation, Meadoworks would have the right to access, use, and occupy the Facility to sell the $1.305M Equipment to another buyer (*i.e.*, to mitigate its damages) ("Use and Occupancy Provision"). (*Id.*; *id.* Ex. A, ¶ 8.)

On May 6 and 7, 2019, Linear wired $200,000 to Meadoworks, a timely payment fulfilling the $195K Agreement plus the initial $5,000 payment required by the $1.305M

2

Agreement. (Compl. ¶ 24.) Following this payment, Linear had until June 6, 2019, to pay the remaining $1.3M of the $1.305M Agreement. (*Id.*) During this 30-day period, Linear used about 29 of the more than 100 items on the asset list for the $1.305M Agreement. (*Id.* ¶ 34.) For example, Linear hung molds in some of the plastic injection molding machines at the Facility. (*Id.* ¶ 27.) Linear did not pay by June 6, 2019. (*Id.* ¶ 28.) Meadowworks emailed a notice of breach to Linear the following day and demanded immediate payment. (*Id.* ¶¶ 26, 29.)

Since Linear failed to pay the remaining $1.3M due under the contract, Meadowworks sought to enforce the $1.305M Agreement's Use and Occupancy Provision to mitigate its damages by selling the $1.305M Equipment to an alternative buyer. (*Id.* ¶ 22.) Yet Linear allegedly refused to honor that provision. (*Id.* ¶¶ 37, 52.) Meadowworks contends that this constitutes a second breach of contract against Linear. Due to Linear's purported refusal to honor that provision, the parties negotiated and executed a new agreement effective August 22, 2019 – the Premises Access Agreement – that allowed Meadowworks the right to access the Facility to auction and sell the $1.305M Equipment to alternative buyers. (*Id.* ¶ 37.)

Then Meadowworks learned that Linear continued wrongfully using many of the items subject to the $1.305M Agreement. (*Id.* ¶ 39.) And Linear prohibited Meadowworks from entering the Facility to mitigate Meadowworks' damages by selling some of the items subject to the $1.305M Agreement, the Use and Occupancy Provision, and the Premises Access Agreement. (*Id.* ¶¶ 39, 52.) Meadowworks received approximately $395,670 in net proceeds in mitigation at resale. (*Id.* ¶ 40.) Accordingly, Meadowworks alleges that even after mitigation Linear owes it about $904,330.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the

sufficiency of the complaint, not to decide the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, we "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964.

Additionally, courts may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

## ANALYSIS

Linear moves to dismiss only Counts II and III of the Complaint: breach of the $1.305M Agreement by way of denying Meadoworks from accessing the Facility (Count II) and conversion (Count III). We address each count in turn.

4

A.      Count II

We first turn to the claim that Linear breached the $1.305M Agreement by breaching its Use and Occupancy provision.  Linear asks us to dismiss this claim as duplicative of and subsumed by Count I's contract claim.

Courts have dismissed or stricken duplicative and redundant claims. *See, e.g.*, *Shaffer v. Respect, Inc.*, Case No. 97-cv-4482, 1999 WL 281345, at *3—*5 (N.D. Ill. Mar. 30, 1999); *Nagy v. Beckley*, 578 N.E.2d 1134 (Ill. 1991).  Courts will find two claims duplicative only if they contain the same factual allegations and the same injury. *Id.*

Count I's breach of contract theory arises from Linear's alleged failure to pay the total amount due under the $1.305M Agreement. Although there may be considerable factual overlap between Counts I and II, the claims are not necessarily duplicative.[1]  Although Count I and Count II both stem from the $1.305M Agreement, they allege breaches of different provisions: one from the contract's total payment provision and the other from the Use and Occupancy provision.  The inquiry into these claims thus differ.  For example, Count I's chief inquiry will be whether Linear had an obligation to pay and whether it fulfilled that obligation, whereas Count II's will be whether Linear wrongly prohibited Meadoworks' access to the Facility.  We thus conclude that Count I's breach of contract claim pertaining to payment is not duplicative of Count II's breach of contract claim regarding the Use and Occupancy provision.  We therefore deny the motion to dismiss as to Count II.

---

[1] Our review is limited to the pleadings at this motion to dismiss stage.  The parties may revisit this contention at a later stage in litigation should discovered facts suggest that a different outcome is warranted.

B.    *Count III*

Linear also moves to dismiss Count III (Conversion) for failure to state a claim. We apply Illinois law in evaluating this claim. *See Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 729 (7th Cir. 2014) (holding that courts sitting in diversity apply the forum state's choice-of-law rules when no conflict of law exists). Conversion's elements are (1) a right to the property; (2) an absolute unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) the defendant's wrongful and unauthorized assumption of control, dominion, or ownership over the property. *See, e.g.*, *Van Diest Supply Co. v. Shelby Cnty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005); *Russell Dean, Inc. v. Maher*, No. 17 C 8440, 2018 WL 4679573, at *8 (N.D. Ill. Sept. 28, 2018); *Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008). Linear believes that Meadoworks failed to state a claim for conversion for two reasons: the economic-loss doctrine and a failure to plead a demand for possession of the property.

Our analysis starts and ends with the economic loss doctrine. Linear argues that this doctrine prevents a plaintiff from recovering in tort purely monetary losses resulting from the defeated expectations of a commercial bargain. In Illinois, the economic loss doctrine (also known as the *Moorman Doctrine* in Illinois' courts) bars tort recovery for purely monetary losses between two contracting parties. *Wigon v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012); *Moorman Manufacturing Co., v. National Tank Co.*, 91 Ill. 2d. 69, 88 (1982).[2] The

---

[2] In *Moorman*, the plaintiff discovered a crack in a grain storage tank that the defendant manufactured and sold to the plaintiff. *Moorman*, 91 Ill.2d at 72—74. The contract damages limited recovery to the storage tank itself, so the plaintiff sought recovery in tort for the cost of repair and loss of use. *Id.* The Illinois Supreme Court affirmed the dismissal of the tort claim, holding that a plaintiff may not recover in tort for solely economic losses when there is a related contractual basis for recovery. *Id.* at 88. *Moorman*'s reasoning was that contract law is designed to remedy losses relating to "disappointed expectations due to deterioration, internal breakdown

Illinois Supreme Court has held that "economic loss" in this context means "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits-without any claim of personal injury or damage to other property as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Vanco US, LLC v. Brink's, Inc*., No. 09 C 6416, 2010 WL 5365373, at *6 (N.D. Ill. Dec. 14, 2010) (quoting *Moorman*, 91 Ill.2d at 81) (internal citations and quotations omitted). This doctrine prevents tort law from encroaching on disputes that are best resolved under the principles of contract. *See id.*; *see also 2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd*., 136 Ill.2d 302, 308 (1990) ("the relationships between suppliers and consumers of goods are more appropriately governed by contract law than by tort law," and "the rules of warranty serve to limit the potentially far-reaching consequences that might otherwise result from imposing tort liability for disappointed commercial or consumer expectations"). So, we are tasked with determining whether this case's conversion claim falls within the economic loss category of damages contemplated in *Moorman*. 91 Ill. 2d. at 88.

Here, Meadoworks alleges that Linear was contractually obligated to allow Meadoworks access to the Facility should Linear fail to pay the amount owed so that Meadoworks could mitigate its damages at auction. When Linear allegedly breached the agreement by failing to pay on time, Meadoworks sued for both breach of contract and conversion arising from the same conduct. But, "*Moorman* dictates that, when a contract sets out the duties between the parties, recovery should be limited to contract damages, even though recovery in tort would otherwise be

---

or no accidental cause, whereas causes of action in tort are suited for personal injury or property damage resulting from a sudden or dangerous occurrence." *Id.* at 86.

available under the common law." *St George Investments, LLC v. QuamTel, Inc*., No. 12-CV-9186, 2014 WL 812157, at *9 (N.D. Ill. Mar. 3, 2014) (quoting *R.J. O'Brien & Assocs., Inc. v. Forman*, 298 F.3d 653, 657 (7th Cir. 2002)). In other words, the *Moorman* doctrine bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations, exactly what Meadoworks improperly attempts to do here. *See St George*, 2014 WL 812157 at *9 (quoting *Wigod v. Wells Fargo*, 673 F.3d 547, 567 (7th Cir. 2012)). Although Count III alleges that Linear "wrongfully and without authorization assumed control, dominion or ownership of the $1.305M Equipment," that conduct derives purely from the contract-based claims that Linear accessed and used equipment "that were subject to the $1.305M Agreement in preparation for using them, *without having paid the purchase price pursuant to the $1.305M Agreement.*" (Compl. ¶¶ 27, 58 (emphasis added).) We thus conclude that Meadoworks' conversion claim attempts to do exactly what *Moorman* prohibits by bringing a tort claim for purely economic losses arising out of an alleged breach of contract. *See St George*, 2014 WL 812157 at *9—*10 (dismissing a conversion claim under the *Moorman* doctrine where the plaintiff also brought claims for breach of contract arising from the same conduct.).

Meadoworks' attempt to salvage its conversion claim under *Moorman*'s exceptions falls flat. Illinois recognizes three general exceptions to the *Moorman* doctrine:

> "(1) where the plaintiff sustained damage, *i.e.*, personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions."

*Catalan v. GMAC Mortg. Corp*., 629 F.3d 676, 693 (7th Cir. 2011) (quoting *First Midwest Bank, N.A. v. Stewart Title Guaranty Co*., 843 N.E.2d 327, 333–34 (Ill. 2006)). None of these

exceptions apply.  First, no sudden or dangerous occurrence is alleged.  Second, there is no intentional false representation alleged in this case, as is the distinguishing factor from this case's allegations and those of fraud and deceptive business practices in *Vanco*, 2010 WL 5365373 at *6.  Third, Meadoworks' Complaint does not allege a negligent misrepresentation.[3]  We reject Meadoworks' contention that *Moorman*'s exceptions rescue the conversion claim.

Accordingly, Linear's motion to dismiss Count III is granted and Meadoworks' conversion claim is dismissed.

### C.      Punitive Damages

Our dismissal of Count III (conversion) leaves two contract-based claims remaining. Punitive damages are generally not available for a breach of contract—even a willful breach of contract. *See Morrow v. L.A. Goldschmidt Associates, Inc.*, 492 N.E.2d 181, 184 (Ill. 1986) ("punitive damages are recoverable where the breach amounts to an independent tort and there are proper allegations of malice, wantonness or oppression.") (internal citations and quotations omitted).  Nevertheless, our dismissal of Count III (conversion) mooted this motion to strike since Meadoworks' breach claims do not, as pleaded, seek punitive damages. (Compl. ¶¶ 48, 54.) This makes sense considering Plaintiff's Response does not articulate a basis for punitive damages drawn from the remaining breach claims. (Resp. (Dkt. No. 20) at 14.)  Since Meadoworks does not make a claim for punitive damages connected to the breach of contract claims, there is nothing for us to strike.  The motion to strike is denied as moot. (Dkt. No. 11.)

---

[3] Meadoworks additionally contends that other exceptions to the economic loss doctrine exist like claims rooted in extra-contractual duties like the duty not to convert another's property.  But as discussed above, the Complaint plainly alleges that Linear's use of the $1.305M Equipment was a duty chiefly related to the parties' contract.

## CONCLUSION

For the foregoing reasons, Linear's combined motion to dismiss and to strike is granted in part and denied in part. To the extent it is granted, Count III (conversion) is dismissed. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: July 21, 2020
Chicago, Illinois

10